IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Allyson SEXTON, general administratix and administratix ad prosequendum of the Estate of Brett J. SEXTON, and Allyson SEXTON, individually, <br><br> Plaintiffs, <br><br> v. <br><br> Anthony J. RIZZETTA, D.O., *et al.*, <br><br> Defendants. | Civil No. 15-3181 (RBK/AMD) <br><br> **OPINION** |

This matter comes before the Court upon the motion of Cape Regional Medical Center ("Defendant") to limit damages to $250,000 under the New Jersey Charitable Immunity Act, N.J. Stat. Ann. § 2A:53A-7 *et seq.* (*See* Doc. No. 77.) Because Defendant is a charitable organization that is organized exclusively for hospital purposes, and because Plaintiff was a beneficiary of its services, Defendant's motion is **GRANTED**.

## I.   THE FACTS

On July 12, 2013, Brett Sexton was admitted to Cape Regional Medical Center. (Def. Ex. B at 8.) He was diagnosed with a litany of issues, and a nursing triage evaluation in the emergency department states he was suffering from diffuse pain in the epigastric region radiating to flanks, shoulder pain, anxiety, panic, and vomiting. (*Id.*) He began to experience delirium tremens. (Def. Ex. B at 8.) Defendant's nursing staff then administered medications such as Ativan and Haldol to alleviate his combativeness and anxiety. (*Id.*) Mr. Sexton was also restrained by hospital staff. Once he was non-combative, hospital staff turned him to a supine position. He was then found

1

unresponsive; his face was blue and gray; there were no vital signs. Resuscitative efforts were unsuccessful. Mr. Sexton was pronounced deceased.

The amended death certificate dated September 4, 2013 documented sudden cardiac arrest during physical struggle while Mr. Sexton was restrained, along with acute necrotizing pancreatitis, dilated cardiomyopathy, chronic ethanol abuse, and obesity as causes of death. The autopsy report indicated Mr. Sexton had been subject to serious physical stresses. The death certificate stated homicide.

Mr. Sexton's estate, the plaintiff in this matter, then filed an action for medical malpractice, alleging—among other things—that the hospital deviated from the duty of care resulting in Mr. Sexton's death. (Def. Ex. B. at 8-9.) Defendant has filed a motion to limit damages pursuant to the New Jersey Charitable Immunity Act, claiming to have been a non-profit organization organized exclusively for hospital purposes since before July 2013. (Def. Ex. A at 1.) It has presented an affidavit stating as much. We now address that motion.

## II. DISCUSSION

Under the New Jersey Charitable Immunity Act, the liability of nonprofit hospitals to negligence actions is limited to $250,000. N.J. Stat. § 2A:53A-8. Close scrutiny of this statutory scheme will reveal the disposition of this motion. Section 2A:53A-7(a) completely immunizes entities "organized exclusively for religious, charitable or educational purposes" from negligence actions brought by "beneficiaries" of those entities' activities, while § 2A:53A-7(b) immunizes nonprofit hospitals in particular from any such negligence action. Section 2A:53A-8, however, provides that "notwithstanding" the blanket immunity of § 2A:53A-7, any nonprofit organized exclusively for hospital purposes shall be liable in a negligence action for no more than $250,000, inclusive of interest and costs. Thus, as the Supreme Court of New Jersey has explained,

> By the plain language of N.J.S.A. 2A:53A–7 and –8, a hospital is subject to limited liability under section 8 if it is formed as a nonprofit corporation, society, or association, is organized exclusively for hospital purposes, was promoting those objectives and purposes at the time the plaintiff was injured, and the plaintiff was a beneficiary of the activities of the hospital.

*Kuchera v. Jersey Shore Family Health Ctr.*, 221 N.J. 239, 249, 111 A.3d 84, 90 (2015). Importantly, the Act's grant of immunity is to be applied liberally, N.J. Stat. Ann. § 2A:53A-10, and we are to rely on the text of the statute in interpreting it. *See Pizzullo v. New Jersey Mfrs. Ins. Co.*, 196 N.J. 251, 264 (2008).

Plaintiff first argues this provision is unconstitutional, but this is without merit. "The constitutionality of the charitable immunity legislation, which has been part of our statutory law for more than thirty years, is now well settled." *Johnson v. Mountainside Hosp.*, 239 N.J. Super. 312, 320, 571 A.2d 318, 322 (App. Div. 1990). When determining state law, this Court predicts how the state's courts would apply it; it does not fashion it anew. *See Erie Castings Co. v. Grinding Supply, Inc.*, 736 F.2d 99, 100 (3d Cir. 1984) ("When the highest state court has not rendered an authoritative pronouncement, the task of a federal tribunal is to predict how that court would rule."). We will therefore not overrule an interpretation by the courts of New Jersey on the validity of a New Jersey statute under the New Jersey Constitution.

Plaintiff's primary argument in opposing the motion is that the charitable immunity statute does not apply to Defendant. The statute applies to a "nonprofit corporation . . . organized exclusively for hospital purposes," which shall be liable for no more than $250,000. N.J. Stat. Ann. § 2A:53A-8. Plaintiff emphasizes the exclusivity of this language, and draws on *Klein v. Bristol Glen, Inc.*, 2010 WL 3075582 (App. Div. 2010) for the argument that the hospital must show that it is actually a nonprofit and not one solely in name. *Klein* addresses whether a nursing home raking in millions of dollars can be considered a "charitable" entity under § 2A:53A-7(a). The

3

court noted the searching inquiry given to entities describing themselves as "charitable" and the risk that profit-seeking enterprises would seek to immunize themselves in contravention of public policy and common decency. Entities whose operations were "virtually exclusively funded by government money and compensation paid by the private market for value received" were not entitled to charitable immunity. *Klein*, 2010 WL 3075582, at *6 (quotations omitted). Plaintiff asks that this Court extend *Klein*'s searching inquiry of whether an entity is indeed "charitable" under § 2A:53A-7(a) to whether, under § 2A:53A-8, an entity is actually a "nonprofit." Plaintiff contends the policy of treating all hospitals as nonprofits, "except obviously for tax purposes," (Pl. Br. at 8), is a bad one for purposes of immunity.

Article III courts do not generally make policy decisions, and that is especially the case when a federal court, sitting in diversity, is asked to predict how the courts of New Jersey would apply their own laws. But today we do not need to make those decisions, for *Klein* does not stand for the proposition Plaintiff argues it does. Rather, *Klein* took a close look at whether an entity is indeed engaged in "charitable purposes" under § 2A:53A-7(a). That term's analog in § 2A:53A-8 is "hospital purposes," and there is no reason—and none has been presented—to doubt that Defendant is indeed engaged in the operation of a hospital. Although Plaintiff would have this Court apply the searching inquiry of *Klein* to the term "nonprofit," *Klein* itself did not scrutinize the non-profit status of the nursing home before it. And that is because "[n]onprofit status cannot be equated with charitableness." *Hamel v. State*, 321 N.J. Super. 67, 74 (App. Div. 1999). We will not conflate the terms. If New Jersey courts find tax status suffices to show nonprofit status for purposes of the Charitable Immunity Act, so will this Court. *See Parker v. St. Stephen's Urban Dev. Corp.*, 243 N.J. Super. 317, 324 (App. Div. 1990) (noting that an entity seeking charitable

immunity is a nonprofit under § 501(c)(3) of the Internal Revenue Code). And we will likewise rely on what other courts have found sufficient.

Defendant has produced an affidavit showing it is a nonprofit organization organized exclusively for hospital purposes. (Def. Ex. A.) It states that Cape Regional Medical Center has been continuously organized as a non-profit exclusively for hospital purposes since before July 2013. (*Id*.). Plaintiff has not seriously contested this document's validity, and we find it sufficient. *See Mottola v. Union City*, 2006 U.S. Dist. LEXIS 52258 at *5 (D.N.J. July 31, 2006) (finding that defendants satisfied the Charitable Immunity Act by producing two affidavits from hospital staff demonstrating the hospital was a nonprofit entity organized exclusively for hospital purposes); *see also Hottenstein*, 981 F. Supp. 2d at 294 (finding that defendants satisfied the Act by producing certification from hospital staff stating that it was a nonprofit entity organized exclusively for hospital purposes and a Revised Articles of Incorporation which supported that assertion).

The Court also finds that Mr. Sexton was a beneficiary of Defendant's services, as is necessary for the Act to apply, under the liberal view mandated by § 2A:53A-10. He was admitted to Cape Regional Medical Center, where he received triage evaluation, multiple medications, and other nursing assessments. (Def. Ex. B at 8.); *see Mottola*, 2006 U.S. Dist. LEXIS 52258 at *6 (stating that "every patient at the hospital receiving care is a beneficiary of its work."). The triage evaluation, medications, and other nursing assessments all compel the conclusion that Mr. Sexton was a beneficiary of Defendant's services. *See Hottenstein*, 981 F. Supp. 2d at 294 (stating that the court decided to follow the Legislature's instructions to "liberally construe the definition of beneficiary so as to afford immunity to qualifying entities 'in furtherance of public policy for the protection of [such entities].'") (citations omitted).

We therefore find that Defendant falls within the scope of the limited liability granted by § 2A:53A–8.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Limit Damages will be granted. An Order follows.

Dated: 12/07/2017                             /s Robert B. Kugler
                                              ROBERT B. KUGLER
                                              United States District Judge